```
                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ALABAMA
                             MIDDLE DIVISION

BARBARA ANN ACREY,              }
                                }
     Plaintiff,                 }
                                }      CIVIL ACTION NO.
v.                              }
                                }      98-AR-0713-M
JACK'S FAMILY RESTAURANTS,      }
Inc.,                           }
                                }
     Defendant.
```

FILED 99 AUG -3 AM 9:55 U.S. DISTRICT COURT N.D. OF ALABAMA

ENTERED AUG -3 1999

## MEMORANDUM OPINION

Presently before the court are two motions filed by defendant, Jack's Family Restaurants, Inc. ("Jack's"). Jack's has filed a motion for summary judgment seeking judgment as a matter of law on all claims asserted against it by plaintiff, Barbara Ann Acrey ("Acrey"). Specifically, Jack's seeks judgment as a matter of law on Acrey's claims that it violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), when it failed to rehire her. Jack's has also filed a motion to strike portions of Acrey's affidavit submitted in opposition to summary judgment. For the reasons stated herein, the motion for summary judgment is due to be denied. The motion to strike is due to be granted in part and denied in part.

**Background**

Acrey worked at Jack's Restaurant in Centre, Alabama from July 8, 1995 until her resignation on September 13, 1996. It is undisputed that she was

a good employee, in fact she held the position of Assistant Store Manager[1] at the time of her resignation. It is also undisputed that Acrey voluntarily resigned from employment at Jack's in order to take her one week paid vacation at the time she wanted to take it.[2]

The parties agree that on the day Acrey resigned, words were exchanged between Acrey and her Store Manager, Marie Baker ("Baker"). Though Acrey originally intended to resign from her management position, take her vacation, then return to Jack's as a crew member, as a result of the argument on September 13, the parties agree that Acrey ended her employment with Jack's as to any position.[3] Acrey agreed that she would give Jack's three weeks notice before her resignation would be effective. Acrey agreed to work the first two weeks, then use the third week as her paid vacation. Acrey verbally resigned from her employment with Jack's on September 13, and submitted a written resignation notice the following week.

Shortly after verbally resigning but before submitting her written resignation, Acrey informed Baker that she wanted to return to the store as a crew member. Acrey claims that Baker told her that she could return

---

[1] At Jack's, the Assistant Store Manager answers to the Store Manager, who in turn answers to the Area Manager.

[2] Acrey claims that she was afraid of losing her vacation for some reason. Her fear is inexplicable, as – contrary to her assertions – information contained in the company policy on vacations does not indicate that employees must take vacations when earned. Acrey had at least a year from her anniversary date to take her vacation, which would have given her until July of 1997. This matter, though perplexing, is irrelevant for summary judgment purposes.

[3] Notwithstanding Jack's contention, made in its motion to strike, that Acrey's affidavit purports to argue that she never terminated her employment completely but only resigned as management, the court reads Acrey's affidavit as acknowledging that she verbally terminated all employment with Jack's, reconsidered this decision, then expressed a desire to return to Jack's as a crew member.

as a crew member to that particular store. Acrey claims that Baker gave her the same assurance during Acrey's visit to Baker's home on September 26, 1996 and twice on October 2 (once at the store and once at Baker's home). Acrey asserts that during the October 2 conversations with Baker, Baker told her to report back on Friday, October 4 so that Baker could let her know her work schedule. In support of her position, Acrey submits her own deposition testimony, her own affidavit, and an affidavit of a co-worker who attests that after Acrey turned in her resignation, she heard Baker tell Acrey that she would be hired back as crew at the Centre store after Acrey's vacation.

Baker denies ever telling Acrey that she could return to the Centre store as crew. With regard to the October 2 conversations, Baker maintains that she told Acrey to come to the store on Friday so Baker could let Acrey know <u>whether</u> she would be rehired and put on the schedule, not <u>when</u> she would be rehired and put on the schedule.

After her visit to the store on October 2, Acrey learned that she was pregnant. Acrey drove back to the store and informed everyone of her news, then drove to the home of Baker, who had already left the store. Acrey maintains that Baker continued to assure her that she would be rehired, and that she should come in Friday, October 4 to pick up her schedule. When Acrey returned to the store on October 4, Baker informed her that she would not, in fact, be rehired as crew at the Centre store. Baker maintains that at that time she explained that Acrey could work at another store, such as Piedmont or Gadsden, but could not return as crew to the Centre store. Acrey emphatically denies that she was ever offered the option to transfer to another store. Acrey claims that in a later conversation, Baker told her that she "might could" get a job at another store, but did not make the

3

employment sound definite and said nothing about her benefits remaining the same. Acrey also attempts to undermine Baker's claim that Baker offered Acrey a transfer by explaining that the Area Supervisor, Janet St. John ("St. John"),[4] told Acrey that she would not be hired in any of the stores supervised by St. John. At the time, St. John supervised the Piedmont and Gadsden stores.

As a result of Jack's refusal to rehire Acrey as crew at its Centre store, Acrey filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 9, 1996 and amended her charge on November 15, 1996. Acrey received a right to sue letter and timely commenced the instant action.

Baker maintains that Acrey was not rehired due to an unwritten policy against allowing a management level employee to step down to a crew level position. Baker explains that she maintained such a policy in recognition of the problems that often occur when employees who were formerly in management positions are suddenly placed on the same level as employees who reported to them just days before. Though Jack's company representative testified that Jack's maintains no such policy, Baker explains that she thought there was such a policy because any time _she_ stepped down from a management level position, _she_ had to transfer stores, and she knows of no employee permitted to remain at the same store after stepping down from management. Baker further adds that whether or not it is a company policy, her Area Supervisor, St. John, maintains such a policy in all stores she

---

[4] In addition to being Baker's immediate supervisor, St. John is also Baker's sister. Jack's acknowledges that allowing one relative to supervise another violates company policy, but maintains that exceptions can be made if the needs of the company warrant it. Depo. of Guy Kirk III, at 16-17.

4

supervises. Consequently, Baker maintains such a policy in the Centre store and applies it consistently.

Acrey argues that this is not the reason Baker gave when Acrey questioned Baker's decision on October 4, and that she heard this explanation for the first time in Jack's response to the EEOC charge. Acrey claims that the only explanation Baker offered up until Jack's response to the EEOC charge was that Acrey would not be rehired because the store was "covered," meaning the store did not need any more employees. Acrey further asserts that on October 7, she returned to Jack's and saw a sign indicating that the store was accepting applications. Shortly thereafter, the Centre store hired several new employees, including at least one male and at least one non-pregnant female.

**Motion to Strike**

In opposition to summary judgment, Acrey submitted an eleven page affidavit detailing the events described above. Jack's seeks to strike certain portions of the affidavit that it claims directly contradict Acrey's earlier deposition testimony, and other portions that it claims constitute inadmissible hearsay.

Jack's seeks to strike portions of the affidavit containing Acrey's assertions that her hand-written resignation letter has been altered. Acrey claims that the words "End date or" have been inserted into a sentence that would otherwise read "last day of employment will be on 9-29-96." Because Jack's cites several instances in her deposition testimony in which Acrey clearly and unambiguously states that all the hand-writing on the letter is her own, this assertion contained in the affidavit is due to be stricken, as it is "inherently inconsistent" with prior sworn

5

testimony. *See Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986); *Lambert v. Independent Life & Accident Ins. Co.*, 994 F. Supp. 1385, 1389-91 (M.D. Ala. 1998). Acrey also states:

> I believe I ended that resignation with the sentence 'due to these reasons I do not believe that I can stay with Jack's any longer <u>as management</u>.' The words 'as management' are missing, and that is what I actually wrote as I recall. I believe my original resignation was altered...

Acrey Aff., ¶ 10. Although the court's own viewing of the letter inspires serious doubts as to whether the letter could have been altered, a court cannot strike an affidavit based on its own impressions of credibility. *See Lambert*, 994 F. Supp. at 1391. Only those statements that are inherently inconsistent with prior testimony can be stricken. *Id.* Because Acrey's earlier testimony identifyint all writing on the document as her own is not inherently inconsistent with a later expression of her belief that some of that writing has been erased, the remainder of paragraph 10 will not be stricken.

Jack's also seeks to strike paragraph 8 of Acrey's affidavit. Jack's contends that Acrey is attempting to refute her earlier acknowledgment that she initially resigned from all employment with Jack's. As stated earlier, the court does not interpret paragraph eight as Jack's does. The court also disagrees with Jack's contention that paragraphs 14, 16, 17, and 34 of Acrey's affidavit, in which Acrey asserts that she was told to return to the store on Friday to pick up her work schedule, are inherently inconsistent with Acrey's deposition testimony that Baker would "let her know something on Friday." The court also disagrees with Jack's contention that paragraph 4, which contains the statement that Acrey was "two months past due on [taking her vacation], and that [she] might very well end up losing [the vacation]," is inherently inconsistent with Acrey's deposition

6

testimony acknowledging that she had until July of 1997 to take her vacation. Acrey's deposition makes clear that she had asked repeatedly for the time off, and that each time she was told she must wait until the store's numbers improve. Given the conditions that existed at the store at that time, it is possible that Acrey feared the store's numbers would not improve enough to allow her to take her vacation within the alotted time. To the extent that Jack's motion seeks to strike paragraphs 4, 8, 14, 16, 17, and 34 of Acrey's affidavit, the motion will be denied.

Lastly, Jack's seeks to strike all references to conversations between Acrey and Wendy Carroll ("Carroll"), a former employee at Jack's who, according to Acrey, stepped down from the Assistant Manager position to a crew level position at the same store - a store that was supervised by St. John. Jack's is correct in its contention that most of paragraphs 28, 29, and 30 contain inadmissible hearsay that does not fall within any of the exceptions to the hearsay rule. To the extent that Jack's seeks to strike the hearsay contained in Acrey's affidavit, the motion is due to be granted.

**Motion for Summary Judgment**

Though the parties dispute some issues that are immaterial to Acrey's claim,[5] some disputed issues involve facts that _are_ material. Specifically, the parties dispute whether Baker told Acrey that she could return as crew to the Centre store, then changed her decision shortly after learning that Acrey was pregnant. Acrey has submitted sufficient evidence to demonstrate a genuine issue as to this important piece of information.

---

[5] Such as the parties dispute as to why and whether Acrey believed she was about to lose her vacation.

7

The parties also dispute whether Baker explained her decision not to rehire Acrey by stating that the store was "covered," or by citing the policy followed in her store and in all stores supervised by St. John against allowing employees to step down from management to crew in the same store. If the former explanation was proffered, it is undisputed that the store hired several new employees shortly after Acrey sought re-employment, suggesting that Baker's explanation was merely a pretext for pregnancy discrimination. If Baker gave the latter explanation, there still remains a question as to whether Baker and St. John employed their policy consistently, or whether some managers under their supervision were permitted to step down to crew positions. Acrey has presented sufficient evidence to demonstrate a genuine issue as to whether exceptions were made in the case of non-pregnant employees. Because issues of material fact exist, Jack's is not entitled to judgment as a matter of law.

An appropriate order denying in part and granting in part Jack's motion to strike and denying Jack's motion for summary judgment will be entered.

DONE this 3rd day of August, 1999.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE